UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINA LIMON,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:21-cv-00820-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 13, 14, 15) |

This matter is before the Court on Plaintiff Cristina Limon's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Social Security Disability Insurance. The parties have consented to entry of final judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 8-10.)

The matter was taken under submission on the parties' briefs without a hearing. Having reviewed the record, the administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows:

**I.    DISCUSSION**

**A.    Dr. Schwartz's Medical Opinion**

Plaintiff first argues that the Administrative Law Judge ("ALJ") erred in weighing

1

consultative examiner Arthur Schwartz, M.D.'s medical opinion. (ECF No. 13 at 8-11.)

1.  Legal Standards

In this circuit, courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986))

*Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017).[1]

The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §

---

[1] The Social Security Administration has adopted new rules applicable to claims filed after March 27, 2017, which revise the rules regarding evaluation of medical opinions. However, these revisions do not apply to Plaintiff's claim, which was filed in 2015.

405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004); *Coleman v. Saul,* 979 F.3d 751, 755 (9th Cir. 2020) ("Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul,* 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation," the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1998 (9th Cir. 2008).

   2.   Analysis

On April 27, 2019, Plaintiff underwent a consultative examination with Dr. Schwartz, an orthopedist. (A.R. 950.) Dr. Schwartz opined that Plaintiff's maximum standing, walking, and sitting capacities were "[u]p to four hours and limited" because of neck and back pain. (A.R. 953.) Plaintiff could lift, carry, and pull up to ten pounds, "limited by neck and back pain." (*Id.*) She could frequently reach overhead, reach forward, handle, finger, and feel, "limited by pain in the shoulders and numbness of the hands." (*Id.*) Working at heights, around heavy machinery, extreme temperatures, chemicals, dust, fumes, gases, and excessive noises "all should be limited and would be hazardous for her." (*Id.*)

Dr. Schwartz also completed a Medical Source Statement dated April 27, 2019, and checked boxes indicating Plaintiff could occasionally lift and carry up to 20 lbs. (A.R. 954.) Additionally, Plaintiff could sit, stand, and walk for up to one hour without interruption and up to three hours total in an eight-hour workday. (A.R. 955.) She could frequently reach, handle, finger, feel, and push/pull with both the right and left hand, and could occasionally operate foot controls with the left and right feet. (A.R. 956.) Dr. Schwartz opined that Plaintiff could never climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (A.R. 957.) Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, or sort, handle, or use paper/files. (A.R. 958.) When asked to identify the particular medical or clinical findings supporting his opinions, Dr. Schwartz either did not respond or listed Plaintiff's symptoms of shoulder, neck, back, hand, and knee pain, weakness, and numbness of hands. (A.R. 954-958.)

Dr. Schwartz's opinion was contradicted by State Agency Physicians Dr. S. Niknia and Dr. Sandra Battis, both of whom opined that Plaintiff's functional limitations were less severe than those opined by Dr. Schwartz. (A.R. 119-21, 134-36.) Thus, the Court examines whether the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. Schwartz's opinion.

The ALJ weighed Dr. Schwartz' opinion as follows:

> In April 2019, the claimant underwent consultative orthopedic examination by Dr. Arthur Schwartz. She complained of neck, back, shoulder, knee, and ankle pain. She alleged that she had pain throughout her body. She stated that she lived with her two children and a friend. She stated that she was able to drive, shop, watch television, and take care of her two children. She reported that her friend helped with the household chores.
>
> The physical examination revealed that the claimant appeared healthy. She had good range of motion and muscle strength throughout. She did not have significant neurological impairment.
>
> Dr. Schwartz diagnosed cervical spondylitis with sciatica, right shoulder impingement syndrome, and right ankle arthritis.
>
> The diagnosis appeared based on subjective complaints because there was a lack of findings upon examination. He opined that the claimant could lift, carry, and pull up to 10 pounds frequently and occasionally and sit, stand, and walk up to 4 hours. He opined that the claimant was precluded from climbing, stooping, crouching, kneeling, and crawling. He opined that the claimant was limited to frequent reaching overhead and forward, handling, fingering, and feeling. He opined that the claimant had limited ability to work at heights, around heavy machinery, temperature extremes, chemicals, dust, fumes, gases, and excessive noise (Exhibit 41F).
>
> The evaluation of Dr. Schwartz was given partial probative weight. The lack of findings upon examination was consistent with the overall record, but some of the assessed functional limitations were not warranted. They were based on the claimant's subjective allegations rather than objective evidence based upon the examination. Another consideration was that no other medical source assessed such severe functional limitations.

(A.R. 40.)

Plaintiff does not dispute that the reasons the ALJ identified for discounting Dr. Schwartz' opinion were legally sufficient. Instead, Plaintiff argues that these findings were contradicted by the record and therefore were not supported by substantial evidence. (ECF No. 13 at 8-11.)

Here, the ALJ gave Dr. Schwartz's opinion partial weight because the functional limitations he described were based on Plaintiff's subjective allegations rather than the objective

4

medical evidence. The Ninth Circuit has explained that an ALJ may reject a physician's opinion that is premised on a claimant's own subjective complaints that the ALJ properly discredited. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (q*uoting Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

Plaintiff argues that Dr. Schwartz relied on his examination findings and not her subjective reports. (ECF No. 13 at 10-11.) However, when asked to identify the particular medical or clinical findings supporting his assessment, Dr. Schwartz did not list his examination findings or any other objective medical findings. (A.R. 954-58.) Instead, Dr. Schwartz only identified Plaintiff's pain symptoms or did not respond at all. (*Id.*) Additionally, as discussed further below, the ALJ properly discounted Plaintiff's subjective symptom testimony. Thus, the ALJ's finding that Dr. Schwartz unduly relied on Plaintiff's subjective complaints is reasonable and supported by substantial evidence.

The ALJ also discounted Dr. Schwartz's opinion because the opined limitations were inconsistent with the overall record and his own examination findings. In arguing that this finding was not supported by substantial evidence, Plaintiff points to Dr. Schwartz's physical examination revealing numbness in the hands, some reduced lumbar flexion, shoulder motion "somewhat painful," and straight leg revealing "a pulling pain in the lumbosacral area." (ECF No. 13 at 9.; A.R. 951-52.) Plaintiff also cites to four MRIs and various examinations which indicated pain, tenderness, swelling, decreased range of motion, and decreased strength in Plaintiff's back, shoulder, hip, and upper extremity. (ECF No. 13 at 9-10.) However, the examination findings and other medical records Plaintiff cites do not reflect the same severity as the limitations in Dr. Schwartz's opinion.

Additionally, the Court has reviewed the ALJ's citations to the record and they contain several examples of modest medical findings and conservative treatment. For example, after her right carpel tunnel surgery, Plaintiff reported mild pain and her treating physician noted improvement in range of motion and recommended that she return to work. (A.R. 37, 631, 645.) Diagnostic testing frequently described Plaintiff's results as slight, mild, or moderate. (A.R. 37-

5

38, 40, 631, 639, 644, 707, 718, 817-18, 936-37, 959, 1015, 1108-09.) Plaintiff also typically described her shoulder and lower back pain as between a 3/10 and a 5/10 or 6/10, and reported that medication improved her pain. (A.R. 38, 681, 687, 692, 719, 721, 756, 761, 765, 772, 775, 781, 788, 793, 798, 853, 858, 863, 872, 880, 884, 889, 894-95, 899, 922, 940.)

Having reviewed the record, including evidence that supports and detracts from the ALJ's finding, the Court finds that the ALJ's interpretation of Dr. Schwartz's opinion as inconsistent with his examination and the overall record is rational and supported by substantial evidence. Although Plaintiff may disagree with the ALJ's assessment of the evidence, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.") (citation omitted).

In light of the foregoing, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in discounting Dr. Schwartz's medical opinion.

**B.     Subjective Symptom Testimony**

Plaintiff next argues that the ALJ erred in his evaluation of her subjective symptom testimony. (ECF No. 13 at 11-16.)

1.     Legal Standards

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she

6

> has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).

In weighing a claimant's credibility, an ALJ may consider, among other things, the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. *Thomas v. Barnhart,* 279 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court "may not engage in second-guessing." *Id.*

2.  Analysis

Given that there is objective medical evidence of an underlying impairment in this case, the Court examines whether the ALJ rejected Plaintiff's subjective symptom testimony by offering specific, clear, and convincing reasons.

In his opinion, the ALJ evaluated Plaintiff's subjective symptom testimony as follows:

> The claimant testified that she suffered from diabetes mellitus, neck and back pain, knee pain, right shoulder pain, and carpal tunnel syndrome. She stated that she had past work as a sales associate. She testified that she had a high school education and two years of college. She stated that she lived in an apartment with her two children, ages 10 and 7. She stated that she quit her job because she had right carpal tunnel release surgery.
>
> The claimant testified that she was able to take care of her personal hygiene with difficulty buttoning her clothes, watch television, prepare meals for her children, help her children with their homework, read, and use a computer for 8 hours per day.
>
> The claimant testified that her aunt helps her with the household chores and childcare. She acknowledged that she was able to lift up to 20 pounds, sit up to 4 hours, and stand up to 2 hours.
>
> It is important to note that the claimant testified that she did not take any pain relief medication. She stated that she had pursued physical therapy for pain relief.

7

> She stated that she had attended two or three acupuncture sessions, but that treatment did not relieve her pain. She stated that she had sought intermittent chiropractic treatment, ice, heat, and the use of topical cream. She described her pain as moderate of 5-6 on a scale of 10. She alleged that medication did not control her diabetes.
>
> The claimant's testimony was not supported by the medical evidence to the extent that she alleged an inability to perform any work activity. The medical findings were modest and her treatment has been entirely conservative since the 2015 right carpal tunnel release. She described a normal range of daily activities including caring for her two young children, which was inconsistent with the allegation of near total dysfunction. She also acknowledged being able to lift up to 20 pounds, which was consistent with the finding herein that the claimant can perform a range of light work.
>
> . . .
>
> The allegation of disability was severely damaged by the lack of objective physical findings upon numerous physical examinations, x-rays, MRI scans, lab tests, and electrodiagnostic studies. The most significant findings was right carpal tunnel syndrome for which she underwent successful surgery and her surgeon advised her to return to work shortly after the surgery.
>
> The allegation of disability was undermined by the claimant's reports in the record regarding her functional capacity and daily activities. The claimant testified that she was able to take care of her personal hygiene with difficulty buttoning her clothes, watch television, prepare meals for her children, help her children with their homework, read, and use a computer for 8 hours per day.
>
> In an April 2016 exertional activities report, the claimant stated that she was able to lift her daughter for 20 minutes at a time, do the laundry, clean the kitchen, clean the living room, drive, lift groceries, shop in stores, and walk up to 30 minutes (Exhibit 10E).
>
> The claimant told Dr. Schwartz that she was able to drive, shop, watch television, and take care of her two children. These activities were consistent with a much wide [sic] range of functional capacity than alleged by the claimant and conflicted with the allegation of disability.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(A.R. 36, 42.)

Plaintiff again does not dispute that the reasons the ALJ identified for discounting her subjective symptom testimony were legally sufficient and solely argues that they were not supported by substantial evidence. (ECF No. 13 at 11-16.) Specifically, Plaintiff contends that the objective medical evidence supports her testimony, and cites to medical records that she contends

demonstrate "significant abnormalities during physical examinations and diagnostic studies." (ECF No. 13 at 12-13.) The Commissioner, in turn, asserts that Plaintiff's arguments, even if they have merit, "do not erase the wealth of mild and normal findings cited by the ALJ" and those findings are sufficient to meet the substantial evidence standard. (ECF No. 14 at 4.) The Court agrees.

The medical evidence Plaintiff relies on does not demonstrate that she is unable to perform any work activity. Further, as discussed above, the medical record contains several examples of examinations, diagnostic testing, and Plaintiff's own reports indicating her symptoms were mild or moderate. Notably, Plaintiff cites to several of these same records in support of her argument that her limitations were "significant." (*See* ECF No. 13 at 12-13.) Having reviewed the ALJ's reasoning and underlying citations, and in light of the record as a whole, the ALJ did not err in finding that Plaintiff's subjective symptom testimony was not supported by the objective medical evidence.

Plaintiff also contends that the ALJ's characterization of her treatment as conservative was inaccurate. (ECF No. 13 at 15-16.) Specifically, Plaintiff was treated with pain medication and injections, which the Ninth Circuit has suggested are not conservative treatments undermining Plaintiff's allegations of pain. (*Id.*) The Commissioner argues that Plaintiff does not address all of the evidence cited by the ALJ, including some success with chiropractic treatment, progress from physical therapy, reports of improvement with medication, and reduction of pain with a Cam boot, all of which were sufficient to "cast further doubt over claims of debilitation." (ECF No. 14 at 4-5.)

In *Revels v. Berryhill,* 874 F.3d 648, 667 (9th Cir. 2017), the Ninth Circuit rejected the ALJ's finding that the claimant's conservative treatment undercut her testimony because that finding was not supported by the record. There, the claimant was treated with Valium, Vlector, Soma, Vicodin, Percocet, Neurontin, Robaxin, Trazodone, and Lyrica, in addition to facet and epidural injections in her neck and back and steroid injections in her hands. *Id.* The *Revels* court found that this was not conservative treatment for fibromyalgia because it was "significantly more aggressive than the type of fibromyalgia treatment [that was] found to be conservative" in other cases. *Id.* Other cases where courts have held that pain medication and injections do not constitute

conservative treatment have typically involved claimants whose pain was treated with a series of regular injections and more invasive procedures, and that treatment was generally ineffective. *See, e.g., Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (physical therapy and epidural shots were not conservative treatment where they were ineffective in treating pain); *Veliz v. Colvin,* 2015 WL 1862824, at *8 (C.D. Cal. Apr. 23, 2015) (collecting cases).

Here, Plaintiff was prescribed Tramadol and Gabapentin[2] and also received pain relief and steroid injections in 2016 and 2017 to treat her right ankle, right wrist, right shoulder, and back pain. (A.R. 481-82, 665, 685, 720, 732, 924.) Plaintiff repeatedly described her pain as being between a 3/10 and 5/10 or 6/10 and reported pain improvement from both forms of treatment. (*See, e.g.,* A.R. 482, 654, 666, 668, 675, 682, 685, 687, 692, 719, 732, 756, 761, 765, 772, 775, 781, 788, 793, 798, 853, 858, 863, 872, 880, 884, 889, 894-95, 899, 922, 924.) Plaintiff also testified at the hearing that she was not taking any medication for pain other than Ibuprofen. (A.R. 94.)

Plaintiff's treatment does not resemble what the claimant received in *Revels* or the other cases where pain medication and injections were not considered to be conservative. *See Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]"). Additionally, the ALJ noted that Plaintiff received other forms of conservative treatment which improved her condition, including physical therapy, chiropractic treatment, and a Cam boot. (A.R. 36-39.) Plaintiff does not dispute that this treatment was conservative, argue that the pain medication and injections were ineffective, or point to any other invasive procedures or treatments. Considering the record as a whole, the ALJ's characterization of Plaintiff's treatment as conservative was reasonable and supported by substantial evidence.

Finally, Plaintiff argues that the ALJ erred in finding that her daily activities undermined her allegations of disability. (ECF No. 13 at 13-14.) Specifically, Plaintiff contends that the ALJ mischaracterized her testimony regarding her daily activities, and the minimal activities described by the ALJ did not contradict Plaintiff's allegations of pain and physical disability. (*Id.* at 14.)

---

[2] At certain points, it appears Plaintiff was also prescribed Naproxen and Celebrex. (*See* A.R. 731, 734.) However, Plaintiff's briefing does not address whether these medications should be considered conservative treatment. (*Id.*)

The Commissioner, in turn, argues that Plaintiff's daily activities "seem inconsistent with complaints of disabling pain and difficulty using her hands." (ECF No. 14 at 5.)

The Court agrees that the ALJ's description of Plaintiff's testimony regarding her daily activities is not supported by substantial evidence. The ALJ described Plaintiff's testimony as being able to "take care of her personal hygiene with difficulty buttoning her clothes, watch television, prepare meals for her children, help her children with their homework, read, and use a computer for 8 hours per day."[3] (A.R. 36, 42.) Plaintiff's testimony regarding these activities was in response to the ALJ's question, "tell me what you do on an average day, what do you do all day long? What kinda things do you do?" (A.R. 92.) Plaintiff did not testify how many hours per day was spent performing each of these activities, either individually or collectively. The Court also questions whether these activities are sufficient to undermine Plaintiff's allegations of disability. However, the Court need not resolve this issue because, as discussed above, the ALJ found other legally sufficient reasons for discounting Plaintiff's subjective symptom testimony, *i.e.* inconsistency with the objective medical evidence and a conservative course of treatment. Thus, the ALJ's credibility determination must be upheld. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that ALJ's decision must be upheld where certain reasons were invalid but the ultimate credibility determination was supported by substantial evidence).

In light of the record as a whole, the Court finds that the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

## II. CONCLUSION AND ORDER

In light of the foregoing, the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

\\\
\\\
\\\
\\\

---

[3] In her brief, Plaintiff argues that the ALJ found that she could use the computer for eight hours per day. (*See* ECF No. 13 at 15.) While somewhat unclear, it appears that the ALJ's finding related to all of the listed activities and not solely the use of a computer.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **April 25, 2022**                          /s/ Erica P. Grosjean
                                         UNITED STATES MAGISTRATE JUDGE